IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN SANDOVAL, SIDNEY PENNIX, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>Defendant. | Civil Action No.: 07 C 2835<br><br>Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Juan Sandoval and Sidney Pennix bring a putative class action against the City of Chicago ("the City"), alleging the City denied them and other City employees promotions and other employment benefits in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.* and the Illinois Service Member's Employment Tenure Act ("ISMETA"), 330 ILCS § 60/1, *et seq.* Plaintiffs move for class certification under Fed. R. Civ. P. 23. For the reasons given below, the motion is denied without prejudice.

## BACKGROUND

### I. Officer Sandoval's Claims

Juan Sandoval is both a patrolman with the Chicago Police Department ("CPD") and a lieutenant colonel in the United States Army Reserve. First Am. Cmplt. ¶¶ 5, 9. On June 15, 2002, Sandoval passed the CPD exam for field training officer, the rank immediately above

patrolman. Ans. at 4; First Am. Cmplt. ¶ 9. After serving with the Army Reserve in Iraq from February 2003 to April 2004, Sandoval claims the CPD wrongfully denied him a promotion to field training officer based on his absence due to military service. First Am. Cmplt. ¶¶ 5, 9. Sandoval asserts he was again denied the promotion after a stint at Fort Bragg from summer 2004 to April 2005. *Id.* ¶ 10.

While on active duty in March 2006, this time in El Salvador, Officer Sandoval took and passed the first part of the CPD sergeant exam, despite the CPD's alleged refusal to provide "reasonable accommodation" for Sandoval to take the test. *Id.* ¶ 11. Although the complaint does not indicate whether Sandoval took or passed the other portions of the sergeant exam, one of the grievances listed is that the CPD has not offered to promote Sandoval to sergeant. *Id.* ¶ 11. Sandoval claims that in response to his repeated complaints regarding the CPD's failure to promote him, the CPD has stated that "because he was away on active duty, the promotions went to other individuals." *Id.* ¶ 13.

## II. Officer Pennix's Claims

Sidney Pennix is both a CPD officer and a major in the United States Army Reserve. *Id.* ¶ 6. Officer Pennix was on active duty in Iraq from December 2005 until January 2007. *Id.* ¶¶ 6, 14. In March 2006, Pennix flew from Baghdad to Frankfurt, Germany to take the CPD sergeant exam. *Id.* ¶ 14. Pennix alleges he took the exam despite the CPD's refusal to provide "reasonable accommodation" for him to do so. *Id.* ¶ 14. The complaint does not indicate whether he passed. *Id.* ¶ 14. Plaintiffs further allege that the CPD has unlawfully denied Officer Pennix a promotion, but do not identify the position Pennix was denied. *Id.* ¶ 15.

2

## III. Class Claims

While plaintiffs are police officers, they seek to represent employees of all City departments. Plaintiffs define their proposed class as:

> All persons who are or have been employed by the City of Chicago who, while they were employed by the City, were called to active duty in the United States military and who, upon return from that active duty, were denied reemployment, retention in employment, promotion, or any benefit of employment. The class time period is from January 1, 1997 to the present.

Mot. to Amend Class Def. ¶ 11. Plaintiffs claim the City's discriminatory conduct has prevented numerous other City employees from taking exams linked to promotion, and from "obtain[ing] rightful promotions," as well as wages and benefits. First Am. Cmplt. ¶¶ 15-16. Plaintiffs move to certify their proposed class of City employees pursuant to Fed. R. Civ. P. 23.

## DISCUSSION

### I. Legal Standards

Fed. R. Civ. P. 23 permits class actions under an exception to the general rule that named plaintiffs conduct litigation only on their own behalf. *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982). The court has broad discretion whether to certify a proposed class, and the proponent bears the burden of showing that certification is warranted. *Hyderi v. Washington Mutual Bank, FA*, 235 F.R.D. 390, 394 (N.D. Ill. 2006) (Filip, J.). A court will certify a proposed class only if plaintiffs satisfy all requirements of Rule 23(a) and at least one of the conditions enumerated in Rule 23(b). *Id.* at 395. The class must also be sufficiently well defined. *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005) (Conlon, J.), *aff'd*, 472 F.3d 506 (7th Cir.

3

2006), *cert. denied*, 127 S.Ct. 2952 (2007).

A court should not analyze the merits of a claim in deciding whether to certify a class, but it may "prob[e] behind the pleadings" to determine whether named plaintiffs' claims fairly encompass those of the class they seek to represent. *See Hyderi*, 235 F.R.D. at 395; *see also Falcon*, 457 U.S. at 160. And "some discovery may be necessary to determine whether a class should be certified." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

## II. Analysis

### A. Class Definition

Before reaching a Rule 23(a) analysis, the court must decide whether (1) the proposed class is sufficiently defined so as to be identifiable, and whether (2) the named plaintiffs fall within the class definition. *Oshana*, 225 F.R.D. at 580. Proper definition of the class is crucial for two reasons. First, it allows both the court and the parties to anticipate the burdens the case will impose on them. Second, it ensures that the suit will benefit only deserving individuals—the class description cannot be "so broad as to include individuals who are without standing to maintain the action on their own behalf." *Id.* (quoting *Guillory v. Am. Tobacco Co.*, No. 97 C 8641, 2001 WL 290603 (N.D. Ill. March 20, 2001) (Guzman, J.)). "If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification." *Pastor v. State Farm Mutual Automobile Ins. Co.*, No. 05 C 1459, 2005 WL 2453900, at *2 (N.D. Ill. Sept. 30, 2005) (Conlon, J.).

Plaintiffs' original class definition conditioned membership on an employee's having been discriminated against after his absence for military service. Mot. to Amend Class Def. ¶ 10. Plaintiffs amended their proposed class definition to include any City employee who, within the

4

class period, was called to active military duty and denied employment rights upon his return. *Id.* ¶ 11. Plaintiffs' amended definition is still overbroad. It encompasses an untold number of potential members who lack standing to maintain the action on their own behalf. *See Oshana*, 225 F.R.D. at 580. A service member does not have standing to bring suit pursuant to the relevant provision of USERRA unless his employer discriminates against him *based on his military service*. 38 U.S.C. §4311(a). But the amended class definition would include individuals who were not subjected to USERRA discrimination. The amended definition is also overbroad because plaintiffs present no evidence to tie the City's alleged wrongdoing to the expansive class it seeks to certify. *See Duffin v. Exelon Corp.*, No. CIV A 06 C 1382, 2007 WL 845336, at *4 (N.D. Ill. 2007) (Conlon, J.).

The amended class definition would still require the court to conduct individual inquiries to determine class membership. Plaintiffs seek to represent all City employees who were denied employment benefits "upon return" from active duty. Their use of the phrase "upon return" implies that plaintiffs wish to place at issue only employment decisions temporally proximate to employees' return from active duty. But the definition is expansive enough to include a City employee who concluded her military service on January 1, 1997 and was denied a promotion on September 1, 2007. The amended definition would thus force the court to determine, on an individual basis, which employment decisions were made "upon" a given employee's return from military service. For this reason and those above, plaintiffs do not fulfill the threshold requirement that the class be sufficiently defined.

### B. Rule 23(a) Requirements

Rule 23(a) requires that (1) class members be so numerous that joinder of their claims is

impracticable ("numerosity"), (2) all class members' claims have a question of law or fact in common ("commonality"), (3) the named parties' claims and defenses be typical of those of their fellow class members ("typicality"), and (4) the named parties and their attorneys be able to protect the interests of the class fairly and adequately ("adequacy"). Fed. R. Civ. P. 23(a).

### 1. Numerosity

Rule 23(a) requires that putative class members be so numerous that joinder of their claims would be impracticable. Fed. R. Civ. P. 23(a)(1). To be impracticable, joinder need not be impossible; instead plaintiffs must prove that joinder would be inconvenient and difficult. *Duffin*, 2007 WL 845336, at *4. Plaintiffs may establish impracticability based on good faith estimates, and the court may rely on "common sense assumptions" in determining whether the proposed class is sufficiently numerous. *Allen v. Chicago Transit Authority*, No. 99 C 7614, 2000 WL 1207408, at *7 (N.D. Ill. July 31, 2000) (Conlon, J.). But plaintiffs may not rely on conclusory allegations or speculation to establish numerosity. *Id.*; *see also Duffin*, 2007 WL 845336 at *7.

While there is no "magic number" of class members that satisfy Rule 23(a)'s numerosity requirement, 40 is usually enough. *Hyderi*, 235 F.R.D. 396. In its analysis of impracticability, the court should consider "the size of the class, the geographic dispersion of its members, the nature of relief sought, and the practicality of re-litigation of a common core issue." *Pastor*, 2005 WL 2453900 at *3.

Plaintiffs contend they clearly meet the numerosity requirement. They offer affidavits attesting that: (1) at least 256 CPD employees are also members of the United States Armed Forces (8/24/07 S. Davis Aff.); (2) as of October 1, 2007, 43 CPD officers were on active

military duty, sixteen of them on their second or third tour (10/2/07 Supp. S. Davis Aff.); (3) four Chicago firefighters or paramedics were called to active military duty in September 2007 (10/5/07 Thomas E. Ryan, Jr. Aff.); and (4) 45 firefighters or paramedics are either reservists or members of the National Guard (*Id.*).

The City responds that plaintiffs fail to show numerosity. It points out that plaintiffs do not attempt to estimate the number of individuals described by their class definition. The City also notes plaintiffs' silence as to whether any of the City employees mentioned in plaintiffs' affidavits were denied reemployment, retention in employment, promotion, or other employment benefits. *Id.* at 6.

Plaintiffs fail to provide a basis for a reasonable estimate of putative class members' numerosity. Plaintiffs must establish something more specific than the number of City employees who are also service members; they must establish the number of individuals *described by their class definition*. *See* Fed. R. Civ. P. 23(a). As the City notes, plaintiffs do not even attempt to estimate this number. Instead, they rely on conclusory allegations (*see* First Am. Cmplt. ¶19; Class Cert. Mem. at 5) and speculation (*see* Class Cert. Mem. at 6) to fulfill the numerosity requirement.

Other factors weigh against a finding of numerosity. First, plaintiffs have provided no evidence that potential class members are widely geographically dispersed. Presumably, most City employees live in or near Chicago, making joinder more practicable.

Second, because the common core issue plaintiffs raise, whether the City has violated USERRA or ISMETA, calls for an individualized, fact-intensive analysis of each employee's claim, the class action mechanism would not spare the court or the parties re-litigation of a core

7

issue. *See Allen v. City of Chicago*, 828 F.Supp. 543, 552 (N.D. Ill. 1993) (Aspen, J.). Just to prevail on one of their USERRA claims, plaintiffs would need to prove that the City denied each class member "employment, reemployment, retention in employment, promotion, or [a] benefit of employment," and that each class member's military service was a "motivating factor" for each denial. 38 U.S.C. § 4311(a), (c); *Snowman v. IMCO Recycling, Inc.*, 347 F.Supp.2d 338, 342-43 (N.D. Tex. 2004). Judicial inquiry under this standard would be inherently individual and fact-intensive, requiring plaintiffs to prove the intent of numerous, independent decision-makers in the context of dozens or hundreds of individual employment decisions. Resolution of plaintiffs' claims would necessitate consideration of various other factors that may vary from plaintiff to plaintiff, such as class members' qualifications for different jobs and the qualifications of non-class members against whom they competed. *See Allen*, 828 F.Supp. at 552. And even if plaintiffs meet this initial burden on a class-wide basis, the City can escape liability by proving it made the employment decisions for legitimate reasons unrelated to employees' military service. *See* 38 U.S.C. §4311(c); *Snowman*, 347 F.Supp.2d at 342-43. Because of the fact-intensiveness and individuality of the inquiries necessary to resolve plaintiffs' claims in the class action they propose, the court would not be spared re-litigation of a core issue. For this reason and those explained above, plaintiffs have failed to establish numerosity.

### 2. Commonality

To meet Rule 23(a)'s commonality requirement, a plaintiff must demonstrate that all putative class members' claims share "a common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). When proceeding under a pattern-or-practice

8

theory of discrimination, a proponent of certification "must demonstrate more than shared membership in a protected class, but must offer sufficient evidence to bridge the gap between his or her own individual claim and those of the class members who suffered the same injury." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 422 (N.D. Ill. 2003) (Ashman, M.J.) (citing *Falcon*, 457 U.S. at 157). And "plaintiffs must support their allegations of a pattern or practice of discrimination with affidavits or other evidence, particularly statistics, to raise an inference of across-the-board discrimination." *Id.* at 423 (quoting *Ploog v. Homeside Lending, Inc.*, 2001 WL 987889, at *7 (N.D. Ill. 2001) (Ashman, M.J.)) (quotation marks omitted); *see also Adams v. R.R. Donnelley & Sons*, No. 98 C 4025, 96 C 7717, 2001 WL 336830, *11-*12 (N.D. Ill. Apr. 6, 2001) (Kennelly, J.); *Attenborough v. Const. and General Bldg. Laborers' Local 79*, 238 F.R.D. 82, 95-97 (S.D.N.Y. 2006) (Holwell, J.).

Plaintiffs argue that issues unite the proposed class, chiefly "whether the City has a pattern and practice of denying employees who are called to active duty in the military the appropriate promotions and benefits upon their return to civilian service." Class Cert. Mem. at 6. The City counters that plaintiffs fail to link their individual claims to the putative claims of the class they seek to represent. It argues that the decentralized nature of the employment decisions at issue, as well as the inherent individuality of each employee's claim, thwart plaintiffs' efforts to establish commonality among such a broad class.

Plaintiffs provide insufficient evidence to establish that a discriminatory pattern or practice exists to unite the expansive class they propose. Sandoval and Pennix aspire to represent a broad spectrum of City employees, claiming that anti-military service discrimination pervades every City department, affecting hundreds of individuals. Plaintiffs provide only tangentially

relevant information regarding the number of Chicago police officers, firefighters, and paramedics serving in the armed forces. They offer no statistical evidence to show *any* pattern of discrimination by the City. Indeed, the only evidence of discrimination plaintiffs offer are the anecdotes provided by the named plaintiffs themselves. Only Sandoval provides any direct evidence of prohibited discrimination: the allegation that an unnamed CPD representative told Sandoval that "because he was away on active duty, the promotions went to other individuals." First Am. Cmplt. ¶ 13. Plaintiffs' allegations fail to support a reasonable inference of systemic discrimination warranting class certification.

Because their class definition is so broad, plaintiffs' claims likely implicate numerous, independent decision-makers in various City departments. While "[c]ommonality is relatively easily satisfied when a single individual or a small, centralized group makes decisions . . . a decentralized hiring procedure, which allows decision-makers to consider subjective factors . . . cuts against the assertion that an employer engages in a pattern or practice of discriminatory hiring as a standard operating procedure." *Ellis*, 217 F.R.D. at 424 (citing *Stastny v. Southern Bell Tel. and Tel. Co.*, 628 F.2d 267, 279 (4th Cir. 1980). And "[d]iscrimination based solely on membership in a protected class, which manifests itself in a different set of facts for each employee is not enough to satisfy the commonality requirement." *Id.* at 423 (quoting *Abram v. United Parcel Serv. of Am., Inc.*, 200 F.R.D. 424, 432 (E.D. Wis. 2001) (Randa, J.)) (internal quotation marks omitted). Plaintiffs' allegations, which offer limited anecdotal evidence and no directly relevant statistical data, fail to establish that endemic discrimination unites the putative class. This failure is magnified by the fact that the decision making involved was probably highly decentralized. Thus, plaintiffs do not establish commonality.

### 3. Typicality

A plaintiff's claim is typical of those of the putative class if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Retired Chicago Police Ass'n*, 7 F.3d at 597 (quoting H. Newberg, Class Actions § 1115(b) at 185 (1977)) (internal quotation marks omitted). Analyses of commonality and typicality are closely related. *Hyderi*, 235 F.R.D. at 396. To show their claims are typical of the proposed class, plaintiffs must adduce some evidence showing that the alleged discriminatory practice was applied uniformly to all class members. *Ellis*, 217 F.R.D. at 428.

The City argues that the putative claims of the employees plaintiffs seek to represent are too diverse for plaintiffs' claims to be typical of them. It notes that plaintiffs largely base their claims on CPD's failure to promote them, while the putative class would include individuals denied different benefits of employment, such as reemployment and retention in employment, by different City departments.

Plaintiffs' typicality argument is merely a series of conclusory statements. *See* Class Cert. Mem. at 7. They provide no reasons *why* their claims are typical of those of the class, they simply insist that they are. And plaintiffs provide no evidence, only speculation, that the claims of other class members are similar to theirs. Given these deficiencies, plaintiffs have not met their burden of establishing typicality. *See Falcon*, 457 U.S. at 157-58 (to establish typicality, the proponent of class certification in an employment discrimination case "must prove much more than the validity of his own claim," he must provide evidence sufficient to show that a class of individuals were injured by the same discriminatory practice).

11

The class that plaintiffs propose would require them to establish causality between discrimination against those who served in the military and employment decisions. But absence due to military service may have been "just one of many reasons" for employment decisions adverse to class members. *See Oshana*, 225 F.R.D. at 582. Given both "the great potential variations for class members' claims" and plaintiffs' failure to provide evidence of City-wide anti-military service discrimination, plaintiffs have not established typicality. *See id.*

### 4. Fairness and Adequacy

Rule 23(a)'s adequacy requirement has two prongs: (1) counsel for the named plaintiff must be skilled and experienced enough to represent the class effectively, and (2) the named plaintiffs themselves must be able to protect the interests of all class members. *Hyderi*, 235 F.R.D. at 396. The City does not dispute the adequacy of plaintiffs' counsel. And in light of their impressive credentials and experience, the attorneys for plaintiffs are well able to prosecute a class action effectively.

Plaintiffs contend they can adequately protect the interests of the entire putative class because they are "challenging the same unlawful conduct and seeking the same relief." Class Cert. Mem. at 8. The City responds that, because plaintiffs likely competed with other putative class members for the benefits and positions at issue, they are inadequate class representatives. Opp. Mem. at 10-11. The City also argues that plaintiffs are inadequate class representatives because different defenses may be raised against different class members. *Id.* at 11.

A named plaintiff may fail the second prong of the adequacy test if the defendant raises an "arguable defense" against him that is not applicable to the rest of the class. *Ellis*, 217 F.R.D. at 430 (quoting *Hardin v. Harshbarger*, 814 F.Supp. 703, 708 (N.D. Ill. 1993); *see also Oshana*,

12

225 F.R.D. at 583. The City raises a laches defense against Sandoval but not against Pennix. Ans. at 14. Yet to thwart adequacy, a defense raised against a named plaintiff that is not raised against other class members must be "arguable;" otherwise, a defendant could block class certification simply by tacking unsupported defenses to its answer. *See Ellis*, 217 F.R.D. at 430. The City offers no argument or evidence to show that its laches defense against Sandoval is "arguable." Ans. at 14. Thus, plaintiffs are not disqualified as class representatives simply because the City raises different defenses against them.

The court's adequacy analysis, however, does not end there. Named plaintiffs are not adequate class representatives if their interests conflict with those of other class members. *Retired Chicago Police Ass'n*, 7 F.3d at 598. Without an adequate class definition, it would be premature for the court to decide whether there are disqualifying conflicts between the named plaintiffs and the putative class.

### B. Rule 23(b) requirements

Because plaintiffs have not satisfied Rule 26(a) requirements, the court declines to reach 23(b) issues.

### CONCLUSION

Plaintiffs have not proposed an adequate class definition to meet Rule 23 requirements. Nor have they satisfied Rule 23 standards outlined above. Accordingly, the class certification motion is denied without prejudice.

ENTER:

October 18, 2007

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge