IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUAN SANDOVAL, et al., )
)
Plaintiffs, )
) Civil Action No.: 07 C 2835
v. )
) Suzanne B. Conlon, Judge
CITY OF CHICAGO, )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

Juan Sandoval and Sidney Pennix (collectively, "plaintiffs") sue the City of Chicago ("the City"), alleging violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.*, and the Illinois Service Member's Employment Tenure Act ("ISMETA"), 330 ILCS § 60/1, *et seq.* Plaintiffs are Chicago police officers and members of the army reserve. They claim the City denied them reasonable accommodations to take promotional examinations while they served on active military duty. The City moves for summary judgment. For the reasons stated below, the motion is granted.

**I.  SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a

verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). The movant has the burden of establishing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the non-movant must set forth specific facts supported by admissible evidence that establish a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Batish v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). A party who bears the burden of proof may not rest on the pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005) (citation omitted).

## II. BACKGROUND UNCONTESTED FACTS

Sandoval and Pennix are Chicago Police Department ("CPD") officers. Def. Facts ¶¶ 1, 4. Sandoval was hired in 1982 and was promoted to his current field training officer position on July 23, 2007. *Id.* ¶¶ 1, 21. Pennix was hired in 1999 and promoted to his current field training officer position on June 1, 2003. *Id.* ¶¶ 4, 19. Sandoval and Pennix informed the CPD they were members of the armed services before they were hired. *Id.* ¶¶ 3, 6.

### A. *The Field Training Officer Promotion Process*

A field training officer is a first line supervisor for police recruits, selected from the rank of police officers who have had no prior CPD supervisory duties. *Id.* ¶ 14. The CPD issued a notice on April 12, 2002 announcing that it was accepting field training officer applications. *Id.* ¶¶ 12-13. Applicants who passed a written practical exam and received an acceptable evaluation in certain law enforcement subject areas were placed on a candidate eligibility list for the

2

position. *Id.* ¶ 12. The notice stated that as vacancies occurred, members would be selected by seniority from the eligibility list to attend a required 4-week training program with approximately 30 others. *Id.* ¶¶ 13, 16. During the training, field training officer candidates do not perform any patrol duties. *Id.* ¶ 15.

Sandoval and Pennix took and passed the written practical field training officer exam on June 15, 2002, placing them on the 2002 eligibility list. *Id.* ¶ 18. Pennix, along with approximately 31 others, attended and completed the first training program (commencing on May 12, 2003) based on the 2002 eligibility list. *Id.* ¶ 19. Pennix was promoted to his field training officer position on June 1, 2003. *Id.*

Sandoval was on military leave when subsequent training programs were scheduled in 2003 and 2005. *Id.* ¶¶ 19-20. There is no evidence that he requested make-up training sessions when he returned from military leave. He did, however, attend the training program on May 21, 2007, with 29 other candidates. *Id.* ¶ 21. He was promoted to his field training officer position effective June 16, 2007.

On February 8, 2008, Sandoval received and cashed a $14,406 check for field training officer retroactive pay from June 1, 2003, the date the class from the 2002 eligibility list was promoted. *Id.* ¶ 22. Because field training officers hold the career-service rank of police officer, a promotion does not result in a new seniority date for the promoted officer. *Id.*

### B. *The Police Sergeant Promotion Process*

Sergeant promotions occur when the CPD determines there is an operational need and when there are budgeted vacancies. *Id.* ¶ 36. On January 10, 2006, the City announced the 2006 police sergeant examination. *Id.* ¶ 23. The examination consisted of three components: (1) a

3

written qualifying test; (2) an assessment exercise; and (3) a merit selection process. *Id.* Sandoval and Pennix were among 5,452 police officers who applied to take the 2006 sergeant examination. *Id.*

The written qualifying test was administered to all applicants on the same day, March 25, 2006. *Id.* ¶ 24. No reschedules were permitted for the test. *Id.* There is no evidence that anyone requested a rescheduling of the test. On the test date, Sandoval was on military leave of absence in El Salvador. *Id.* ¶ 25. Sandoval submitted a written request to the CPD for an accommodation to take the test at a testing site off the military base where he was stationed. The request stated:

1. My name is Juan Sandoval, star number 12490, and employee number 48610.

2. I am presently in the Army Reserves and on active duty at this time in El Salvador. I have been called up on active duty since 09 Mar 06 and will be here for several months in support of a mission.

3. I have registered for the SGT exam and am requesting off site accommodations for the SGT's test.

4. My commander here at the base camp concurs with my having to go off base to a site for testing. This should not be a hindrance on my activities for the test.

5. I can be reached at e-mail, juan.sandoval@us.army.mil or Cell 011 757 338 0957. Task Force El Salvador New Horizons 2006.

*Id.* at Ex. N. The request was approved. *Id.* ¶ 25. The CPD contacted Ernst & Young, the firm retained to administer the 2006 sergeant examination, to advise them that Sandoval's accomodation request was approved. *Id.* Sandoval took the test at the Ernst & Young office in San Salvador, El Salvador, which was the closest office to the military base where he was stationed. *Id.* He did not recommend or request an alternative accommodation. *Id.* ¶ 39.

Pennix also submitted a written request to take the 2006 sergeant examination overseas because he was on a military leave of absence in Baghdad, Iraq. *Id.* ¶ 26. His request provided the following:

> R/O [Pennix] is presently deployed overseas in Baghdad, Iraq. R/O has registered on-line for the sergeant's exam. R/O is requesting to take the exam overseas because of the inability to return to the U.S. R/O has moved to a different location than the address provided during test registration. Below is contact information for R/O. Because there is very little time before the test, please use email or phone to contact R/O.

*Id.* at Ex. N. The request was approved, allowing Pennix to take the test at the Ernst & Young office in Frankfurt, Germany, which was the closest office to the military base where he was stationed. *Id.* ¶ 26. He testified he should have been allowed to take the written qualifying test when he returned to Chicago, but he did not request such an accommodation, nor did he tell the CPD what he thought would be a reasonable accommodation. *Id.*

Sandoval and Pennix passed the written qualifying test, allowing them to continue in the 2006 sergeant examination process. *Id.* ¶ 27. Of the 4,050 applicants who took and passed the written qualifying test, 3,636, including Sandoval and Pennix, took the assessment exercise. *Id.* ¶ 28. The assessment exercise was administered to all candidates on the same day, June 24, 2006, and no reschedules were allowed. *Id.* ¶ 29. Sandoval took the assessment exercise in Chicago. *Id.* ¶ 30. Pennix was on military leave of absence at the time in Baghdad, so he took the assessment exercise at the Ernst & Young office in Frankfurt. *Id.* He testified he should have been allowed to take the assessment exercise when he returned to Chicago, but he never requested such an accommodation nor did he tell the CPD what he thought would be a reasonable accommodation. *Id.* ¶ 40.

5

Based on their assessment exercise scores and continuous service dates, Sandoval is rated 1,110 and Pennix 1,955 on the assessment exercise eligibility list. *Id.* ¶ 31. Approximately 70% of the sergeant promotions will be made in rank order from this list. *Id.*

The 4,050 applicants who passed the written qualifying test, including Sandoval and Pennix, are on the merit selection eligibility list. Approximately 30% of the sergeant promotions will be made from this unranked list. *Id.* ¶ 32. Those promoted from this list are chosen because they have demonstrated exemplary job-related skills, abilities and personal characteristics. *Id.* ¶ 33. The police superintendent selects promoted applicants. *Id.* Applicants on a military leave of absence are considered in the merit promotion process. *Id.* ¶ 35.

One merit nomination process has occurred to date based on the results of the 2006 sergeant examination. *Id.* ¶ 37. The applicant promoted from the assessment exercise eligibility list was ranked 40. *Id.* All promoted applicants had to be on full duty and on active status with the CPD on July 30, 2007, when they were ordered to report for pre-service sergeant training. *Id.* Sandoval and Pennix, who were not on military leave of absence, were not selected for promotion to sergeant in the first round. *Id.* Sandoval and Pennix remain eligible for promotion to sergeant from both the assessment exercise eligibility list and the merit selection eligibility list. *Id.* ¶ 38.

## III. DISCUSSION

### A. *USERRA Discrimination*

The USERRA prohibits discrimination that denies any benefit of employment on the basis of an employee's membership in the uniformed services. 38 U.S.C. § 4311(a); *Miller v.*

*City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002). A benefit of employment is broadly defined to include:

> any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

28 U.S.C. § 4303(2).[1]

Under USERRA, Sandoval and Pennix bear the initial burden of showing by a preponderance of the evidence that their military service was "a substantial or motivating factor" in the denial of an employment benefit. *Velazquez-Garcia v. Horizon Lines Of Puerto Rico, Inc.*, 473 F.3d 11, 16-17 (1st Cir. 2007); *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238-39 (11th Cir. 2005); *Gagnon v. Sprint Corp.*, 284 F.3d 839, 853-54 (8th Cir.2002); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 (9th Cir. 2002); *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 312 (4th Cir.2001); *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir.2001); *Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 106 (2d Cir. 1996); *see also Miller v. City of Indianapolis*, No. 99 C 1735, 2001 WL 406346 (S.D. Ind. April 13, 2001), *aff'd*, 281 F.3d 648 (7th Cir. 2002).

A motivating factor is not necessarily the sole cause of the action, but rather it is one of the factors that a truthful employer would list if asked for the reasons for its decision. *Coffman*, 411 F.3d at 1238-39. Military status is a motivating factor if the defendant relied on, took into

---

[1] Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries. *McGuire v. United Parcel Service*, 152 F.3d 673, 676 (7th Cir. 1998).

7

account, considered, or conditioned its decision on that consideration. *Fink v. City of New York*, 129 F. Supp. 2d 511, 520 (E.D.N.Y.2001) (citation omitted).

Discriminatory motivation is a factual question that may be proven through direct or circumstantial evidence, including but not limited to:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Sheehan*, 240 F.3d at 1014; *Coffman*, 411 F.3d at 1238.

If Sandoval and Pennix demonstrate discriminatory motivation, the burden shifts to the City to prove that legitimate reasons, standing alone, would have induced the City to take the same adverse action. *Sheehan*, 240 F.3d at 1014; *Gummo*, 75 F.3d at 106. This framework is the two-pronged burden-shifting analysis of *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). It is distinct from the three-pronged *McDonnell Douglas* framework used in Title VII suits. Under the latter test, the burden of persuasion always remains on the employee. Once a case of discrimination is established by the employee, the employer must only put forward "some legitimate, non-discriminatory reason" for its action. *McDonnell Douglas Corp. v. Green*, 411, U.S. 792, 802 (1973). The burden is then on the employee to prove that the employer's reason is a pretext for its true motives. *See Velazquez-Garcia*, 473 F.3d at 17. Under the *NLRB* framework, the burden of persuasion shifts to the employer. "The burden of proof cast upon the employer to explain the discrimination is procedurally greater under the *NLRB* test." *Fink*, 129 F. Supp. 2d at 520.

USERRA is violated when an employer denies a benefit of employment to an employee if the employee's membership, application for membership, service, application for service, or obligation for service in the military is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of military service. *Sheehan*, 240 F.3d at 1014; *Gummo*, 75 F.3d at 106.

## B. ISMETA

Under the ISMETA, individuals returning from military service are protected from being denied re-employment to a position "with the same increases in status, seniority and wages that were earned during . . . [the] military service [term] by employees in like positions who were on the job at the time such returning serviceman entered the service, or to a position of like seniority, status and pay, unless such employer's circumstances have so changed as to make it impossible or unreasonable to do so." 330 ILCS § 60/4. ISMETA is therefore violated when an employer fails to re-employ a returning serviceman to a position that is credited the same (or similar) status, seniority, and wage increases enjoyed by those who did not leave for military service.

### C. *Sandoval's claims*

#### 1. Failure to Promote to Field Training Officer in 2003

Sandoval claims he was denied a field training officer promotion in 2003 because the City discriminated against him for serving in the army. It is undisputed that Sandoval was promoted to his current field training officer position in 2007. After his promotion, he was retroactively paid as if he had been promoted with the 2003 training class.

9

Sandoval bears the initial burden of showing that his military service was a substantial or motivating factor for denying him a field training officer promotion in 2003. *Sheehan*, 240 F.3d at 1014. The CPD requires that in order to be promoted to the position, an officer must attend a four-week training program after passing a written exam. The record establishes Sandoval was unable to attend a training session in 2003 because he was on military leave. The issue is whether Sandoval's military service was a substantial or motivating factor for the City's requirement that Sandoval participate in training prior to promotion.

The City argues there are no facts to support this contention. Indeed, Sandoval identifies no evidence whatsoever sufficient to make a *prima facie* showing of discriminatory motivation. Even if Sandoval were able to establish discriminatory motivation, summary judgment is still warranted because the City has presented evidence that establishes the affirmative defense it would have denied Sandoval's promotion in 2003 regardless of his military status. Sandoval simply did not possess the CPD requirements for a promotion required of all candidates, military and non-military in 2003. The CPD required that those who pass the written field training officer exam attend a four-week training program prior to promotion. When Sandoval completed the May 2007 training program, he was duly promoted.

Sandoval argues the City should have offered other training dates while he was on leave or upon his return in 2004. But he does not cite any evidence that he made that request or that the CPD denied such a request. *Compare Fink*, 129 F. Supp. at 518 (failure to accommodate to take a promotional exam may constitute discrimination where veteran requests to take a make-up exam upon return from service).

Further undermining Sandoval's claim is the undisputed fact that he was retroactively paid from June 1, 2003, the promotion date of successful candidates from the 2003 training class. This moots any assertion that Sandoval was denied the benefits he would have received had he been promoted to field training officer in 2003. *See, e.g., Woodard v. New York Health and Hospitals Corp.*, ---- F. Supp. 2d ----, 2008 WL 728887, at *20 (E.D.N.Y. Mar. 17, 2008) (retroactive pay increase resulted mooted USERRA injury). Summary judgment must be granted with respect to Sandoval's failure to promote claim in 2003.[2]

### 2. Failure to Provide Reasonable Accommodation to Take the 2006 Sergeant Examination

Sandoval claims the City violated the USERRA by not providing him a reasonable accommodation to take the written qualifying test portion of the 2006 sergeant examination while he was on military leave in El Salvador. The City contends that summary judgment is warranted because the undisputed facts show Sandoval was reasonably accommodated. Sandoval disputes this because there is evidence he took the test at a location that required him to pass through hostile territory and risk his life.

As an initial matter, the court must first determine whether a reasonable accommodation to take a promotion exam constitutes an employment benefit under USERRA. Given the broad construction of a "benefit of employment," *see* 38 U.S.C. § 4303(2), a reasonable accommodation to take a promotion exam in another location may constitute an employment benefit under USERRA. *Cf. Fink*, 129 F. Supp. 2d at 520 (refusal to grant request for a

---

[2]Sandoval's argument that the retroactive payment warrants a summary judgment *in his favor* is unavailing, as the request is not properly before the court in his own summary judgment motion.

11

promptly administered promotional exam may be construed as a denial of benefit of employment). Construing the undisputed facts in Sandoval's favor, a genuine issue of fact precludes the court from granting summary judgment on this ground.

Nevertheless, Sandoval has the initial burden of demonstrating that the City's *unreasonable* accommodation for the written qualifying test was motivated by his military service.[3] Apart from evidence that the accommodation decision was made because Sandoval was on military leave, there is no evidence showing discriminatory motivation. To the contrary, the record shows that the City *granted* Sandoval's accommodation request by providing him an overseas, off-base test location site. Sandoval never objected to the accommodation he was given, nor did he request a more tailored accommodation. *Compare Fink*, 129 F. Supp. at 518 (failure to accommodate to take a promotional exam may constitute discrimination where veteran requests to take a make-up exam upon return from service). Significantly, there is no evidence to support an inference that the City had an incentive to give him an unreasonable accommodation because he was in the military. The only evidence in Sandoval's favor is that the City knew he was in the armed forces and that he was on military leave. This evidence is insufficient to sustain Sandoval's burden of showing discriminatory motivation. *Cf. Young v. Dep't of Army*, 115 Fed. Appx. 63, at *2 (Fed. Cir. 2004) (fact that an employer knows a person is a veteran is insufficient in itself to make out a USERRA claim).

Sandoval's insistence that a factual issue remains with respect to the reasonableness of the accommodation does not change this analysis. Even if the accommodation was unreasonable and

---

[3]Sandoval does not contest that he was given an accommodation to take the exam. Rather, he contends that the accommodation was unreasonable.

Sandoval had to wade through hostile territory, there is nothing in the record showing that the City made the decision because Sandoval served in the military.

Sandoval's alternative assertion that there is evidence his written qualifying test could have been administered by a military officer (rather than at an off-base Ernst & Young location) is irrelevant to the discriminatory motivation analysis.[4] Even if Sandoval's exam could have been administered by a military officer, this does not show that the City unreasonably accommodated him due to his military service. Sandoval expressly requested an *off-base* accommodation, not an accommodation to have the test administered by a military officer. The testimony Sandoval cites does not indicate whether his written qualifying test could have been administered by a military officer. The testimony cited constitutes inadmissible hearsay. The deponent did not have personal knowledge of whether a promotional exam was administered outside Chicago to a sworn officer on military duty. *See* Lewandowski Dep., p. 64:3-10; *see also* Fed. R. Evid. 801-02; *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (evidence relied upon in defending a summary judgment motion must be admissible at trial).

Sandoval offers nothing but his own speculation to establish a nexus between his military status and the reasonableness of the accommodation he was given. Therefore, he has not established a *prima facie* USERRA discrimination claim based on the reasonableness of his testing accommodation. *See, e.g., Coffman*, 411 F.3d at 1238 (employee's military status was not a motivating factor in corporation's decision not to hire him); *Sanguinetti v. United Parcel*

---

[4] Sandoval cites CPD Sergeant Kenneth Lewandowski's testimony that, "[c]urrently on Saturday, 23rd [of February 2008], the personnel division of the CPD made arrangements for an officer who's in military training to take the test at a different location . . . our personnel department approached me to get a copy of the test so they can FedEx it to his commanding officer." Pls. Facts ¶ 2 at Ex. D.

*Service, Inc.*, 114 F. Supp. 2d 1313 (S.D. Fla. 2000) (no *prima facie* showing that termination was due to military service); *Martin v. AutoZone, Inc.*, 411 F. Supp. 2d 872, 880 (S.D. Ohio 2005) (no evidence that plaintiff was not promoted because of military status); *Palmatier v. Michigan Dept. of State Police*, 981 F. Supp. 529, 533 (W.D. Mich. 1997) (same).

Even assuming Sandoval could satisfy his initial burden of showing discriminatory motivation, the City has identified undisputed evidence showing that it would have made the same accommodation regardless of Sandoval's military status. The pertinent fact here is that the City granted Sandoval exactly what he requested – an accommodation overseas. Sandoval cites no evidence that would counter this material fact or show that he objected to the accommodation. There is no dispute that the City would have made the same decision if a non-military applicant on leave made an identical request. Summary judgment is proper. *See, e.g., Clune v. Desmond's Formal Wear, Inc.*, No 01 C 606, 2003 WL 21796388, at *8-9 (N.D. Ind. Feb. 4, 2003) (plaintiff failed to provide evidence of discriminatory motivation and defendant showed that same adverse decision would have been made absent military status); *Hart v. Hillside Township*, No. 03 C 5841, 2006 WL 756000, at *13 (D.N.J. Mar. 17, 2006) (same); *Coffman*, 411, F.3d at 1239 (same).

### 3. ISMETA Claim

The City argues it is undisputed that Sandoval was restored to his CPD position with the same increase in status, seniority and wages earned by employees in similar positions while he was on military leave. Indeed, the fact that Sandoval became a field training officer in 2007 does not alter this conclusion, because it is undisputed that field training officers hold the career-service rank of police officer. Sandoval does not dispute this characterization, arguing

14

that the only disputed issue is whether the City reasonably accommodated his request to take his written qualifying test for a sergeant promotion while he was on military leave. Accordingly, summary judgment is granted with respect to Sandoval's ISMETA claim.

### D. *Pennix's claims*

#### 1. Failure to Provide Reasonable Accommodation to Take the 2006 Sergeant Examination

Pennix also claims the City violated USERRA by failing to provide him a reasonable accommodation to take the written qualifying exam or the assessment exercise of the 2006 sergeant examination. Like Sandoval, his claim fails because he has not made a *prima facie* showing that the City's test accommodation was motivated by his military service.

The undisputed facts show that while Pennix was in Iraq, he submitted a written request for an accommodation to take the promotional written qualifying test overseas. This request was approved, and the test was administered at the closest Ernst & Young office in Frankfurt, Germany. There is no evidence that the City had any knowledge that Pennix would have to go through hostile territory to take the exam. Nor is there any evidence that Pennix objected to his accommodation or requested another accommodation. *Compare Fink*, 129 F. Supp. at 518 (failure to accommodate to take a promotional exam may constitute discrimination where veteran requests to take a make-up exam upon return from service). Viewing these facts in Pennix's favor, there is no reasonable inference that the City gave Sandoval an unreasonable accommodation *because* of his military service.

Assuming Pennix could satisfy his burden of showing that military service was a substantial or motivating factor for the City's decision to give him an unreasonable

15

accommodation, summary judgment is still warranted. The City has presented undisputed evidence establishing the affirmative defense that it would have made the same accommodation regardless of Sandoval's military status. Pennix never requested an alternative accomodation than the one he was given. Nor was he denied an accomodation altogether. There is no evidence the City knew or should have known that its accommodation was unreasonable. Nor is there any evidence the City would have responded differently to a non-military person's identical request. Accordingly, summary judgment is warranted on Pennix's reasonable accommodation claim.

### 2. ISMETA claim

Similar to Sandoval, Pennix does not dispute that he was restored to the same increases in status, seniority and wages earned by employees in like positions while he served in the military. He argues the only disputed issue is whether the City provided reasonable accommodation for him to take the 2006 sergeant examination while on military leave. Summary judgment is granted with respect to his ISMETA claim.

### E. Remaining Claims

The City moves for summary judgment on claims that Sandoval and Pennix suggestively raised in their depositions. Sandoval and Pennix concede they do not raise those claims in their complaint. The court will therefore not address unpreserved claims.

## IV. CONCLUSION

The City has established that the undisputed facts preclude Sandoval and Pennix from establishing *prima facie* USERRA and ISMETA claims. Accordingly, the City's summary judgment motion is granted.

ENTER:

June 13, 2008

_____
Suzanne B. Conlon
United States District Judge